(No. 11732.—Judgment affirmed.)

THE STATE PUBLIC UTILITIES COMMISSION *ex rel.* East St. Louis Stone Company *vs.* THE TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS *et al.* Appellees.—(THE EAST ST. LOUIS STONE COMPANY, Appellant.)

*Opinion filed December 19, 1917.*

1. PUBLIC UTILITIES—*practice before Public Utilities Commission is substantially same as before Inter-State Commerce Commission.* The statute governing and the practice before the State Public Utilities Commission with respect to rate cases is substantially the same as the statute and procedure governing the hearing of such cases before the United States Inter-State Commerce Commission.

2. SAME—*courts cannot pass upon weight of evidence in rate cases heard by commission.* Under the Public Utilities act neither the circuit court nor the Supreme Court can pass upon the weight of the evidence heard before the Public Utilities Commission on a charge of a discrimination in rates, but if the commission has improperly received or rejected evidence the case may be remanded, with directions to the commission to conduct a further investigation upon proper evidence.

3. SAME—*decisions of utility commissions are not binding upon courts.* Decisions of other public utility commissions may be cited on the hearing before the Public Utilities Commission in this State, but such decisions are not binding upon the courts and will not be regarded as authority.

4. SAME—*when Supreme Court cannot modify order of Public Utilities Commission.* An order of the Public Utilities Commission finding against the claim of a petitioner that its stone quarry was within the switching district of a certain city, and that the rate charged for hauling stone to such city from petitioner's quarry was therefore discriminatory, cannot be modified or set aside by the Supreme Court on appeal, where it is not claimed that the commission acted without authority or improperly received or rejected evidence but only that the order is not supported by evidence heard.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

JOHN L. FLANNIGEN, and SAMUEL W. BAXTER, for appellant.

EDWARD J. BRUNDAGE, Attorney General, GEORGE T. BUCKINGHAM, WILLIAM E. TRAUTMAN, A. D. RODENBERG, T. M. PIERCE, KRAMER, KRAMER & CAMPBELL, DAN MC-GLYNN, LUTHER M. WALTER, and JOHN S. BURCHMORE, for appellees.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

. This is an appeal on behalf of the East St. Louis Stone Company from a decree of the circuit court of Sangamon county affirming an order of the State Public Utilities Commission in dismissing the complaint of said stone company against the Terminal Railroad Association of St. Louis.

The East St. Louis Stone Company is a corporation engaged in quarrying stone at Falling Springs, Illinois, the quarry being located on a branch line of said terminal railroad about nine miles from the relay depot at East St. Louis. Said stone company filed a complaint with the State Public Utilities Commission, alleging that it had been and was being discriminated against by the Terminal Railroad Association of St. Louis in the matter of rates on stone transported by said railroad within the switching district of East St. Louis as fixed by the freight tariff rates as to said district; that said published tariff provided for a charge of twenty cents per ton on crushed stone, etc., moving within the East St. Louis switching limits, whereas by said published tariff the rate on other classes of freight in said switching limits is only ten cents per ton.

It appears from the record that within less than a mile from complainant's quarry, and on the same railroad branch,

is located a small quarry of the Casper-Stolle Quarry Company; that the rate on stone from both of these quarries for delivery upon team tracks or sidings on said terminal is twenty cents per ton; that on the Belleville branch of the Illinois Central railroad, nine miles from the relay depot at East St. Louis, is located the large quarry of the Stolle Company; that the rate from this quarry to points on the terminal railroad in East St. Louis is twenty cents per ton; that at Krause, on the Mobile and Ohio railroad, is located a quarry of the Columbia Quarry Company, about fourteen miles from the relay depot at East St. Louis, and that the charge for the movement of stone from this quarry to points of delivery on the terminal railroad is twenty-two and one-half cents per ton; that about three miles south of Krause, at Columbia, also on said Mobile and Ohio railroad, is another quarry of said Columbia Quarry Company; that the stone from this quarry, on account of its use for special purposes, does not come in competition with any other stone delivered in East St. Louis. About forty miles north of East St. Louis there are quarries at Alton, on the Chicago and Alton railroad, and at Grafton, on the Chicago, Peoria and St. Louis railroad. The charge over these railroads for East St. Louis is twenty cents per ton, which is added to the switching charge of ten cents per ton of the terminal railroad to a point of delivery on said terminal railroad.

The Illinois Central Railroad Company, the Mobile and Ohio Railroad Company, the Chicago and Alton Railroad Company, the Columbia Quarry Company, the Casper-Stolle Quarry Company, and certain other companies interested in the delivery of stone in East St. Louis, filed intervening petitions opposing the petition of complainant. So far as the record shows, no other shipper, dealer, producer or consumer, on the hearing before the Public Utilities Commission, supported the claim of petitioner. Indeed, all (except the petitioner) who appeared before the Public Utilities Commission insisted that the present charge with reference

to the shipping of stone from Falling Springs was just and fair.

It was insisted by the petitioner on the hearing that Falling Springs, under the published tariff, is within the switching district of East St. Louis, while those who opposed the petition insisted that Falling Springs is not within the said switching district, and there was considerable evidence taken on this point. There was no complaint on the hearing or in the petition filed before said commission that the charge of twenty cents per ton for crushed rock or stone moved from Falling Springs to East St. Louis was unjust or unreasonable. It was merely insisted that as Falling Springs was within the East St. Louis switching district, and as the ordinary charge for other classes of freight within the said switching district was only ten cents per ton, there was a discrimination in the charges as to the hauling of crushed stone within this district as compared with the charges for hauling other classes of freight.

The Public Utilities Commission in its findings stated that there was little testimony offered or heard by which a comparison could be made as to the reasonableness of the different rates charged for moving stone from Falling Springs and moving other freight within the switching district of East St. Louis. It also held that lack of uniformity in rates is not, in itself, evidence of discrimination; that the evidence offered failed to disclose what may be the character and cost of the service in the movement of commodities other than stone, or whether the movement of other commodities is similar to the movement of stone; that the commission could not find that there exists any unreasonable difference as to the rates for the service performed on the Falling Springs branch and service performed in handling other commodities in the East St. Louis district, neither could it find that the rates complained of were discriminatory, and therefore it entered an order dismissing the complaint. The East St. Louis Stone Company took an appeal

from this order to the circuit court of Sangamon county, and after a hearing that court 'entered an order affirming the finding of the commission.

Section 38 of the Public Utilities act of this State provides: "No public utility shall establish or maintain any unreasonable difference as to rates or other charges, * * * or in any other respect, either as between localities or as between classes of service," etc. (Hurd's Stat. 1916, p. 2030.) Section 68 of said act states that on the hearing before the circuit court no new or additional evidence can be introduced and the case shall be heard on the evidence taken before the State Public Utilities Commission and certified to by it, and that the "findings and conclusions of the commission on questions of fact shall be held *prima facie* to be true and as found by the commission; and a rule, regulation, order or decision of the commission shall not be set aside unless it clearly appears that the finding of the commission was against the manifest weight of the evidence," etc. Under section 69 of this act the same rules as to hearing before the Supreme Court on appeal are held to apply with reference to the review of the order of the State Public Utilities Commission as apply to the hearing in the circuit court. The statute governing and the practice before the State Public Utilities Commission with respect to rate cases is substantially the same as the statute and procedure governing the hearing of such cases before the United States Inter-State Commerce Commission. It is clear from the finding of the State Public Utilities Commission that the commission found that the principal contentions of the East St. Louis Stone Company were not sustained by the evidence and that the rates complained of did not constitute an unreasonable discrimination. It is not claimed that in the hearing of this matter the commission refused to receive any evidence properly offered. On the contrary, it seems to be argued here that on the evidence submitted before the commission that body made an incorrect and unlawful find-

ing.  The only decree that could have been entered by the circuit court of Sangamon county or could be entered by this court would be for the commission to conduct a further investigation.  Section 68 of the Public Utilities act provides that if it appears that the commission has failed to receive evidence properly offered the court has the power to remand the case to the commission, with instructions to receive testimony so offered and to enter a new order based upon all the evidence taken.  It is obvious from the wording of section 68 that it was not intended that the court shall in any way pass upon the weight of the evidence, but only decide whether or not evidence has been properly received or rejected.

Counsel for appellees contend that the order entered by the commission was what the Supreme Court of the United States has called a negative order, and that the courts are not authorized to review any complaint based solely upon the refusal of the Inter-State Commerce Commission to award the relief asked by the shipper against rate regulations.  (*Proctor & Gamble* v. *United States,* 255 U. S. 282; *Hooper* v. *Knapp,* 225 id. 302.)  This court, in *Chicago, Milwaukee and St. Paul Railway Co.* v. *State Public Utilities Com.* 268 Ill. 49, in discussing a somewhat similar rate question, said (p. 57) : "The fixing of rates is not a judicial function, and the right to review the conclusion of the legislature or an administrative body is limited to determining whether the board acted within the scope of its authority or the order is without foundation in the evidence, or a constitutional right of the carrier has been infringed upon by fixing rates which are confiscatory or insufficient to pay the cost of the traffic and return to the carrier a reasonable profit on the investment.  [Citing authorities.]  In this case the commission acted within the scope of its authority.  * * *  The order had a substantial basis in the evidence, and there is no ground upon which the court could interfere with the judgment of the commission."  To the

same effect, as to the power of courts of review to review the findings of the State Public Utilities Commission, see *Railroad Com.* v. *St. Louis and San Francisco Railroad Co.* 195 Ala. 527; *Coeur D'Alene* v. *Public Utilities Com.* (Idaho) P. U. Rep. 1917-B, 348; *State* v. *Florida East Coast Railroad Co.* (Fla.) P. U. Rep. 1917-B, 1023; *Hocking Valley Railway Co.* v. *Public Utilities Com.* 92 Ohio, 362; *People* v. *McCall,* (N. Y.) P. U. Rep. 1917-A, 553.

Counsel for appellant cite the reasoning of certain decisions made by public utilities commissions of various States to show that the decision of the commission in this matter was improper. The decisions of those commissions could well be cited as authorities on a hearing before the State Public Utilities Commission but are not in point when cited on a hearing before a court to review the decision of such commission. Much evidence was heard by the commission in this case, *pro* and *con,* as to whether there was any discrimination or any unreasonable difference in the rates complained of. There is ample evidence in the record supporting the finding of the commission that there was no such unreasonable discrimination. An order of the Inter-State Commerce Commission which does not contravene any constitutional limitation and is within the constitutional and statutory authority of that body and is not unsupported by testimony cannot be set aside by the courts. (*Pennsylvania Co.* v. *United States,* 236 U. S. 351.) The finding in this case is not against the manifest weight of the evidence heard before the commission, and therefore this court is without authority to set aside or modify such order.

The judgment of the circuit court of Sangamon county must be affirmed.                *Judgment affirmed.*