SPRINGFIELD GAS & ELECTRIC COMPANY *v.* CITY OF SPRINGFIELD.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 46.   Argued October 19, 1921.—Decided November 7, 1921.

State legislation permitting a city owning an electric plant to sell electricity to private consumers and fix the rates by ordinance or resolution of the city council while subjecting a competing private corporation to regulation of its rates by a public commission, *held* not to deny the corporation the equal protection of the laws. Illinois Public Utilities Act, June 30, 1913, §§ 33, 34.   P. 69.

292 Ill. 236, affirmed.

THE plaintiff in error brought this suit in a circuit court of Illinois to enjoin the City of Springfield from operating its plant for the production and sale of electricity to pri- vate consumers without having first filed rates, etc., as re- quired by the Public Utilities Act of the State (Laws 1913, p. 459). A decree dismissing the bill was ultimately

affirmed by the state Supreme Court, whose decision is brought here by the present writ of error.

*Mr. Philip Barton Warren* and *Mr. Joseph S. Clark,* with whom *Mr. William L. Patton* was on the brief, for plaintiff in error.

A municipal corporation which supplies its inhabitants with electricity, gas or water, does so in its capacity of a private corporation, and not in the exercise of its powers of local sovereignty. *Walla Walla v. Walla Walla Water Co.,* 172 U. S. 1; *Los Angeles v. Los Angeles Gas Corporation,* 251 U. S. 32; *Safety Wire Co. v. Baltimore,* 66 Fed. 140; *Walker v. Rock Island, 14 Ill* 139; *Springfield v. Springfield Gas Co.,*

In exercising its private functions a municipality is, from every viewpoint and for every purpose, a private corporation.

The patron of a public utility service furnished by a municipality has the same rights to reasonableness of rates and equality of facilities as the patron of service furnished by any other private corporation.

A municipality furnishing public utility service owes the same duties and obligations to its patrons that any other private corporation does.

The attempted exemption of municipally operated commercial plants by § 10 of the Utilities Act is void, as being in violation of both the state and federal constitutional provisions against class legislation, because it is a special immunity granted the commercially operated municipal plant and relieves it from the same regulations imposed on the like plant of all other private corporations.

The regulation provided for in the Municipal Ownership Act is not of the same kind provided for in the Utilities Act.

The reason assigned by the Illinois court, as a substantial distinction, justifying the exemption of municipal

plants, viz, that because municipal records are open to inspection it is not necessary to require their utility rates to be published and approved by the State Commission, is untenable.

The other reason assigned, viz, that they may not profit to the same extent as plants operated by other private corporations, is also not tenable.

Under the Illinois court's interpretation of the act, that the city must fix rates sufficient to produce the revenue specified (§ 12), no higher, no lower, the city can not be required to fix reasonable rates.

Any legislative attempt to deny the city profits to the same extent as that granted other corporations in the operation of a utility, would be unconstitutional.

That one owner may not profit to the same extent as another does not constitute the kind of difference that justifies its exemption from regulation.

The elimination of the provisions exempting municipally owned utilities does not extend the scope of the Utilities Act beyond the intention of the legislature, as by § 83 it expressly manifested its intention to exempt municipalities only in the event it could do so without violating the Constitution.

*Mr. Bayard Lacey Catron,* with whom *Mr. Albert D. Stevens* was on the brief, for defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill in equity brought by the plaintiff in error, a private gas and electric company, to restrain the defendant City from producing and selling electricity to private consumers without first filing schedules of rates and printing and posting the same as required by §§ 33, 34 of the Public Utilities Act of June 30, 1913. [Laws 1913, p. 459.] The bill was dismissed on demurrer by the Court of first instance. An appeal was taken to the

Supreme Court where the decree was affirmed on rehearing, after a previous decision the other way. The Public Utilities Act and the Municipal Ownership Act [Laws 1913, p. 455] were enacted by the State of Illinois within a few days of each other and, according to the Supreme Court of the State, as parts of a single plan. The former excepts municipal corporations from its requirements and the latter allows cities to go into this business among others and to fix the rates, which in the plaintiff's case are subject to the approval of the State Public Utilities Commission. The plaintiff contends that the exception of municipal corporations from the Public Utilities Act is void under the Fourteenth Amendment and that the act should be enforced as if the exception were not there.

It might perhaps be a sufficient answer to the plaintiff's case that the Supreme Court has intimated after careful consideration that the Utilities Act must stand or fall as a whole, so that if the plaintiff's attack upon the exception were sustained the whole statute would be inoperative and the only ground of the suit would fail. The plaintiff attempts to reargue the question, but upon this point the decision of the State Court would be final and would control. However, as the Supreme Court did not stop at that point, but, assuming that under the law of Illinois the plaintiff had a standing to demand the relief sought if its case was otherwise good, went on to decide the validity of the exception, we think it proper to follow the same course and to deal with the constitutional question raised.

The plaintiff's argument shortly stated is that in selling electricity the city stands like any other party engaged in a commercial enterprise and that to leave it free in the matter of charges while the plaintiff is subject to the Public Utilities Board is to deny to the plaintiff the equal protection of the laws. But we agree with the Supreme Court of the State that the difference between the two types of corporation warrants the different treatment that they have received.

The private corporation, whatever its public duties, is organized for private ends and may be presumed to intend to make whatever profit the business will allow. The municipal corporation is allowed to go into the business only on the theory that thereby the public welfare will be subserved. So far as gain is an object it is a gain to a public body and must be used for public ends. Those who manage the work cannot lawfully make private profit their aim, as the plaintiff's directors not only may but must. The Supreme Court seems to interpret the Municipal Ownership Act as limiting the charges allowed to what will be sufficient to meet outlays and expenses of every kind, thus emphasizing the purely public nature of the interests concerned and excluding the latitude for wrong that the plaintiff fears. The Court further says that the municipalities can exercise their power to make all needful rules and regulations only by ordinances and resolutions as in other public action. It calls attention to the fact that the accounts are regulated by law and open to the public eye, and that the consumers in this as in the other case may have a resort to the courts.

The plaintiff did not venture to contend that the submission of similar duties of different bodies to different tribunals was of itself unconstitutional, or that the fixing of rates might not be entrusted to city councils. But the fact that the municipality owned the plant for which its council fixed the rate was supposed to disqualify its officers, at least when other plants were submitted to the judgment of strangers. But a city council has no such interest in the city's electric plant as to make it incompetent to fix the rates. Whatever the value of the distinction between the private and public functions of the municipality, the duty of its governing board in this respect as we have said is public and narrowly fixed by the act. The conduct of which the plaintiff complains is not extortion but, on the contrary, charging rates that

.draw the plaintiff's customers away.  The standard for these rates, however, according to the Supreme Court, is fixed by the legislature.  If the rates had been fixed by law at the present amounts it would be vain to deny their validity.  The trouble with the plaintiff's argument is that it attempts to go behind the interpretation that the Supreme Court has given to the acts concerned and to overwork the delicate distinction between the private and public capacities of municipal corporations.  It is unnecessary to refer to the numerous cases upon classification by state laws in order to show that the distinction in question here is very far from being so arbitrary that we can pronounce it bad.

*Decree affirmed.*