**CULPEPPER v. PHENIX CITY et al. (4 Div. 289.)**

Supreme Court of Alabama.    April 14, 1927.

Rehearing Denied June 2, 1927.

1. **Waters and water courses** ⬡➝183(1)—**Municipality providing water system is not within statutes giving Public Service Commission jurisdiction to regulate public utilities (Code 1923, §§ 2001, 2002, 2258, 2259, 2266, 9740–9824).**

In view of discretion invested in municipalities, under Code 1923, §§ 2001, 2002, 2258, 2259, 2266, to construct and operate waterworks as a public utility, and especially in view of section 9741, reserving authority to municipalities to fix rates and make service regulations with respect to municipally owned utilities, when a municipality provides for a water system as a public utility, it is not within power of the Public Service Commission, under sections 9740–9824, to regulate and supervise them.

2. **Waters and water courses** ⬡➝183(1)—**Statutes, empowering municipalities to construct waterworks, do not conflict with statutes regulating public utilities (Code 1923, §§ 2001, 2002, 2258, 2259, 2266, 9740–9824).**

Code 1923, §§ 2001, 2002, 2258, 2259, 2266, empowering municipalities to construct waterworks, do not conflict with sections 9740–9824, under which the Public Service Commission is empowered to regulate and supervise municipal corporations in *construction and operation of* public utilities.

3. **Waters and water courses** ⬡➝183(2)—**That projected municipal water system would injure water company held, under facts, not to show bad faith of councilmen.**

That projected municipally owned water system would compete with and injure privately owned and operated water company *held*, under facts, not to show bad faith of councilmen *in adoption of bond election ordinance therefor.*

4. **Constitutional law** ⬡➝213—**Exempting municipal utilities from regulation by Public Service Commission applicable to other utilities held not unlawful discrimination, nor denial of equal protection.**

Separate and different regulatory treatment and distinct classification by Legislature of municipally owned and operated utilities and of other utilities subject to regulation by Public Service Commission is not an unlawful discrimination, nor denial of equal protection.

5. **Municipal corporations** ⬡➝88—**Meeting held pursuant to adjournment of regular meeting is legal, and does not require special notice to councilmen.**

A meeting *held* pursuant to adjournment of a regular meeting of municipal council is not a special meeting, but is itself a regular meeting, not requiring special notice to the councilmen.

6. **Municipal corporations** ⬡➝100—**Adjournment of meeting of municipal council is presumed to have been legal.**

Where nothing to the contrary appears of record, adjournment of meeting of a municipal council is presumed to have been legal.

7. **Appeal and error** ⬡➝1078(1)—**Questions, not argued, are presumed to be abandoned.**

Questions, not argued by council, must be presumed to have been abandoned.

Appeal from Circuit Court, Russell County; J. S. Williams, Judge.

Bill in equity by C. W. Culpepper against Phenix City and the Mayor and Treasurer of said city. From a decree sustaining demurrer to the bill, complainant appeals. Affirmed.

The bill of complaint is filed to enjoin the city of Phenix City from issuing bonds for the construction of additional municipal waterworks.

The substance of the bill is correctly stated in the brief of counsel for appellant, as follows:

"Appellant, as a taxpayer of Phenix City, brings his bill against said city and its officials to enjoin the issue of $125,000 of waterworks bonds. The bill alleges that said city adopted, on August 18, 1925, an ordinance purporting to authorize the calling of an election to submit to voters of the city the matter of the issuance of said bonds; that said ordinance was adopted at a special meeting of the city council, of the holding of which said meeting no notice was given; and that three of the aldermen, namely, J. F. Claridy, N. H. Harris, and W. E. Smith, were not present thereat. A certified copy of the proceedings of the city council, as of August 18, 1925, is exhibited with the bill.

"The bill further alleges that said city, prior to August 9, 1923, was a municipal corporation situated in Lee county, Ala., adjoining Girard, a municipal corporation situated in Russell county, Ala.; that said municipalities covered approximately the same area and had approximately the same population; that by an act of the Legislature approved August 9, 1923, the two municipalities were merged into one, and a small portion of additional territory was taken into the corporate limits; that, at the time of the passage of said act of the Legislature, Phenix City had a waterworks plant which supplied water to the said inhabitants of its territory situate in Lee county, and, at the same time, there was a waterworks plant in Girard owned by a private corporation, namely, the Alabama Water Company, which had a franchise to construct, own, and operate a waterworks plant in Girard, and to supply water to said municipality and the inhabitants thereof, and was operating said waterworks plant under said franchise, and which said franchise had a long time to run; that, about a year prior to the holding of said election, said Alabama Water Company incurred a large expense, under mandate of the state board of health, in improving the said waterworks system, and did thereby secure a

⬡➝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

satisfactory water supply for said city of Girard, and is adequate in all respects.

"The bill further alleges that Phenix City purposes to extend its mains through the Girard portion of Phenix City, to parallel the mains of the said Alabama Water Company, and thus provide a duplicate waterworks system in said Girard portion of said city; that, if said bonds are issued by said Phenix City, a tax burden will be placed upon appellant for the payment thereof; that, in thus building a competing water plant in said Girard section, said city is exercising an unreasonable discretion for the purpose of driving said water company out of business in said Girard section, amounting to bad faith.

"The bill further alleges that the object and purpose of the proposed issue of said bonds is to build said new water plant in said Girard section; that the said city has not obtained a certificate of convenience and necessity from the Alabama Public Service Commission for the construction of said plant.

"The bill further alleges that the convenience and necessity of Phenix City does not require the building of said waterworks plant, and that it is a gross violation of business sense and judgment and of the discretion vested in the municipality to undertake to issue said bonds and to build said waterworks plant.

"The bill further alleges that the existing system of waterworks in said city is adequate for its purposes, and that the said Alabama Water Company has established a physical connection with the waterworks plant of the city of Columbus, Ga., under the terms of which water may be obtained for Phenix City, if any emergency should arise."

The bill exhibits a certified copy of the city ordinance of August 18, 1925, which shows that it was adopted at "an adjourned council meeting from the 17th day of August, 1925"—and "adjourned regular meeting."

Demurrers to the bill as originally filed, and also as amended, were sustained by the trial court, and the appeal is from those decrees.

B. De G. Waddell, of Seale, for appellant.

The municipality has shown bad faith in the proposed issuance of said bonds and the construction of said waterworks system paralleling the existing system. Pilcher v. Dothan, 207 Ala. 421, 93 So. 16. A municipal corporation which supplies its inhabitants with water does so in the capacity of a private corporation. 30 A. & E. Ency. L. 404; Montgomery v. Greene, 180 Ala. 322, 60 So. 900. Municipalities are not exempt from jurisdiction of the Public Service Commission with reference to financing and securities. Montgomery v. Greene, supra; Acts 1920, p. 38, §§ 17, 49; Ala. Water Co. v. Attalla, 211 Ala. 301, 100 So. 490. A special meeting of the municipal board is invalid unless all members have been duly notified as required by law. 2 McQuillin, Mun. Corp. 1321; Code 1923, § 1914; Ryan v. Tuscaloosa, 155 Ala. 479, 46 So. 638.

Barnes & Walker, of Opelika, and Roy L. Smith, of Phenix City, for appellees.

The action of a municipal government can be shown only by the official records, unless lost or destroyed. Pilcher v. Dothan, 207 Ala. 421, 93 So. 16. The ordinance in question was adopted at a meeting adjourned from a regular meeting, and no further notice was required. 28 Cyc. 328, 329. The municipality is not subject to the jurisdiction of the Public Service Commission. Pasadena v. R. R. Comm., 183 Cal. 526, 192 P. 25, 10 A. L. R. 1425; Los Angeles G. & E. Co. v. Pub. Service Dept., 52 Cal. App. 27, 197 P. 962; Sincerney v. Los Angeles, 53 Cal. App. 440, 200 P. 380; Jochimsen v. Los Angeles, 54 Cal. App. 715, 202 P. 902; Re Louisville L. & W. Co., P. U. R. 1921C 160; Humphrey v. Pratt, 93 Kan. 413, 144 P. 197; U. S. Cooperage Co. v. Malden, P. U. R. 1919E, 49; Re So. Side G. & E. Co., P. U. R. 1918A, 593; Pilcher v. Dothan, supra; Const. 1901, § 222; Code 1923, §§ 2001, 2004, 2258, 2266; Acts 1921, pp. 6–8. The municipality, when determining by its council and qualified electors whether bonds shall be issued, is exercising its power of local sovereignty. Montgomery v. Greene, 180 Ala. 322, 60 So. 900; Id., 187 Ala. 196, 65 So. 783; Montgomery v. Smith, 205 Ala. 557, 88 So. 671; Springfield G. & E. Co. v. Springfield, 292 Ill. 236, 126 N. E. 739, 18 A. L. R. 929; Id., 257 U. S. 66, 42 S. Ct. 24, 66 L. Ed. 131; 28 Cyc. 1547.

SOMERVILLE, J. [1] The matter of chief importance presented by the amended bill of complaint in support of its prayer for injunctive relief against the municipality—the prevention of the municipal bond issue as authorized by the municipal election—is found in complainant's contention that under the Public Utility Act of 1920 (Special Sess. Acts 1920, p. 38; Code 1923, §§ 9740–9824) the Public Service Commission "has general and exclusive power and jurisdiction to regulate and supervise" municipal corporations, in so far as they may undertake the construction and operation of public utilities, with respect to their financing and securities (sections 9741, 9744, 9745).

This contention is based upon the principle announced by this court in the case of City of Montgomery v. Greene, 180 Ala. 322, 333, 60 So. 900, 903, wherein it was said:

" 'A municipal corporation, which supplies its inhabitants with water, does so in the capacity of a private corporation, and not in the exercise of the power of local sovereignty.' [And] municipalities stand upon the same footing in this respect as would an individual or private corporation."

The sole point of application, however, was with respect to the duty of a municipal waterworks to those who were, or desired to become, consumers. There was manifestly no intention to say that a municipal waterworks is in all other respects to be governed and treated as an ordinary, privately

owned and operated utility, under the Public Utility Act. And, certainly, notwithstanding their common duties and liabilities in the operation of a utility and the service to be rendered the public, it is clear that, in determining upon the policy of that undertaking, and in providing the means and facilities therefor, the municipality is in no sense a utility, nor acting as a utility, within the meaning and operation of the statute.

On the contrary, the governing body of any municipality in the state is authorized, at its discretion, to order and hold elections at which the qualified voters shall determine whether bonds shall be issued by the municipality in order, among other things, "to purchase or acquire waterworks and light plants, or to construct the same, or to provide the same by purchase and improvement or by improvement alone, * * * whenever such governing board deems it necessary." Code 1923, § 2258. And "all municipal corporations shall have full and continuing power and authority to issue and sell bonds, when such issue is authorized by the election herein provided for," for numerous purposes, including those above named. Code, § 2259. Further, if the bond issue is voted at the election, the governing body of the municipality "shall issue the bonds" as prescribed. Code, § 2266. Succeeding sections provide for the execution and sale of the bonds by the municipality.

The authority to purchase or construct, maintain, and operate waterworks is expressly conferred on municipalities by sections 2001 and 2002 of the Code; and in the exercise of the power they are invested with a discretion. Pilcher v. City of Dothan, 207 Ala. 421, 93 So. 16.

It is inconceivable that the Legislature could have intended, in the face of these plain and positive provisions, to have included municipal corporations among the utilities which are subjected in these respects to regulation and control by the Public Service Commission. Very clearly the utilities thus subjected are those only which are privately owned and operated, and not those owned and operated, or to be owned and operated, by a branch of the government itself, and for the financing of which special provision has been otherwise made.

Inasmuch as the Municipal Code does not expressly confer on municipalities the exclusive authority to fix rates and make service regulations · with respect to municipally owned and operated utilities, the Public Utility Act (Code, § 9741), out of abundant caution, reserves that authority to the municipalities; and, as if to make clear the independence of municipalities in these matters, it is provided that:

"From time to time the commission may make such recommendations to any municipal corporation which owns and operates a utility as from its experience in the administration of this article may seem to the commission necessary or advisable."

The privilege of making recommendations excludes the idea of authority to issue commands.

[2] The chapters of the Code which respectively empower municipalities and regulate utilities in general are separate and distinct, and in no wise conflict with each other.

In Pilcher v. City of Dothan, 207 Ala. 421, 424, 93 So. 16, 19, it was held that:

"The only source of information to determine whether a municipal government has fraudulently exercised or palpably abused its discretion, otherwise than as the result of corruption, is the records and proceedings of the governmental body, whose exercise of discretion is the object of attack."

This principle was reaffirmed and applied in Clements v. Com. of City of Birmingham, 215 Ala. 59, 109 So. 158.

[3] The bill implies bad faith in the adoption of the bond election ordinance, in that the motive of the councilman was to compete with and injure a privately owned and operated water company, already adequately serving the territory to be additionally served; the additional municipal service being wholly unnecessary.

But there is nothing upon the face of the ordinance or of the municipal proceedings which in any way tends to support the theory of bad faith; and "the abuse of discretion, justifying interference with the exercise of a discretionary power, 'implies not merely an error of judgment, but perversity of will, passion, or moral delinquency.'" Pilcher v. City of Dothan, supra.

[4] The separate and different regulatory treatment—the distinct classification by the Legislature of municipally owned and operated utilities and of other utilities—is not an unlawful discrimination, and is not a denial of the equal protection of the laws.

As said by the Supreme Court of Illinois:

"We have no disagreement with the general proposition argued by appellant that a municipal corporation which supplies its inhabitants with light, gas, or water does so in its capacity of a private corporation and not in the exercise of its powers of local sovereignty. * * * Such established principle can furnish no reasonable basis for appellant's argument in this case that such municipalities must be put in the same class with private corporations or persons operating public utilities, for the purpose of regulation and of fixing their rates and charges in operating such public utilities." Springfield Gas. & El. Co. v. City of Springfield, 292 Ill. 236, 126 N. E. 739, 18 A. L. R. 929.

On appeal the decision of the state court was affirmed in a carefully reasoned opinion by Mr. Justice Holmes, Id., 257 U. S. 66, 42 S. Ct. 24, 66 L. Ed. 131.

[5, 6] There is no merit in the contention

that the bond election ordinance was adopted at a special meeting of the city council, as to which three of the councilmen had no notice, and were not present. The certified copy of the municipal proceedings in question, which is made a part of the bill, shows that the meeting was in fact an adjourned meeting from a regular meeting on the day before. The authorities hold, almost unanimously, that a meeting held pursuant to adjournment of a regular meeting is not a special meeting, but is itself a regular meeting, not requiring special notice to the councilmen. Chosen Freeholders of Hudson County v. New Jersey R. etc., Co., 24 N. J. Law, 718; Auburn v. Paul, 84 Me. 212, 24 A. 817; 28 Cyc. 328, 329. And, nothing to the contrary appearing of record, the adjournment is presumed to have been regular. Chosen Freeholders of Hudson County v. New Jersey R. Co., supra.

[7] Several other phases of the bill are not argued by counsel, and must be presumed to have been abandoned.

It results from the foregoing considerations that none of the phases of the bill are sufficient to justify the relief prayed, and the demurrers were properly sustained.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.